UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WANDA FAIRWEATHER,
                    Plaintiff,                    **DECISION & ORDER**
                                                  18-cv-181-JWF

            v.

COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

---

## Preliminary Statement

Plaintiff Wanda Fairweather ("plaintiff" or "Fairweather")
brings this action pursuant to the Social Security Act (the "Act")
seeking review of the final decision of the Commissioner of Social
Security ("the Commissioner"), which denied her application for
benefits.  See Compl. (Docket # 1).  Presently before the Court
are competing motions for judgment on the pleadings.  See Docket
## 16, 19.  For purposes of this Decision and Order, the Court
assumes the parties' familiarity with the medical evidence, the
ALJ's decision, and the standard of review, which requires that
the Commissioner's decision be supported by substantial evidence.
See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so
long as a review of the administrative record confirms that "there
is substantial evidence supporting the Commissioner's decision,"
and "the Commissioner applied the correct legal standard," the
Commissioner's determination should not be disturbed), cert.
denied, 551 U.S. 1132 (2007).

## Procedural History

On January 21, 2014, plaintiff protectively filed her application for disability insurance benefits pursuant to Title II of the Act and for supplemental security income pursuant to Title XVI of the Act, alleging physical and mental disabilities with an onset date of January 21, 2014. See Administrative Record, Docket ## 8, 15 ("AR"), at 260-74. Her claim was initially denied. AR at 147-81. Represented by counsel, plaintiff and a vocational expert (the "VE") appeared before Administrative Law Judge John Noel (the "ALJ") on January 10, 2017 for a hearing on the denial of her application. AR at 85-132. The ALJ issued an unfavorable decision on February 24, 2017. AR at 64-78.

Plaintiff appealed the ALJ's decision to the Appeals Council ("AC") and provided additional treatment records and a medical source statement from plaintiff's treating therapist. The AC did "not consider" the treating source statement or treatment records from February 7, 2017 to February 22, 2017 because they did not show a reasonable probability of changing the decision. AR at 2. The AC determined that the rest of the additional records did "not relate to the period at issue" and therefore did "not affect the decision." AR at 2. The AC accordingly denied plaintiff's appeal on December 5, 2017, making it the final decision of the Commissioner. AR at 1-6.

Plaintiff commenced this action on February 2, 2018 (Docket
# 1) and filed her motion for judgment on the pleadings on February
8, 2019 (Docket # 16). The Commissioner filed his motion for
judgment on the pleadings on April 9, 2019 (Docket # 19), and
plaintiff replied on April 30, 2019 (Docket # 20).

## Discussion

The record reflects that plaintiff, who was 37 at the time of
the hearing, has a long history of mental health issues, including
PTSD stemming from childhood sexual abuse by her father. Medical
records indicate plaintiff has been diagnosed as suffering from
bipolar disorder, schizophrenia, major depression disorder, and
anxiety disorders. See AR at 39-40, 69. At Step Two of the
familiar five step sequential analysis, the ALJ found that
plaintiff had the following severe mental health impairments:
"anxiety disorders, and depressive, bipolar and related
disorders." AR at 67.

As stated above, during the period of time the plaintiff's
application was pending review by the AC, plaintiff timely
submitted additional medical records to the AC. See AR at 2.
These records consisted of (1) treatment records from Horizon
Health Services dated February 7 to February 22, 2017, and a
treating source statement from plaintiff's treating therapist,
Michelle Roberts, LMSW, dated April 14, 2017 (AR at 881-904) and
(2) treatment records dated March 3, 2017 to June 21, 2017 (AR at

3

12-60). AR at 2. On this appeal, plaintiff argues that the AC erred in refusing to consider additional mental health medical source statements and treatment records. I agree and therefore find that remand is required.

"Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." Hollinsworth v. Colvin, No. 15-CV-543-FPG, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016). Where "the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded." Webster v. Colvin, 215 F. Supp. 3d 237, 244 (W.D.N.Y. 2016).

As to the medical records that included the opinion evidence from plaintiff's treating mental health therapist, the AC informed plaintiff that it "did not consider and exhibit this evidence" because it "does not show a reasonable probability that it would change the outcome of the decision." AR at 2. The records, which comprise over twenty pages of treatment notes from February 2017 confirm plaintiff's depression, anxiety, schizophrenia, and PTSD. More significantly, however, the records include a detailed mental health assessment from plaintiff's treating therapist, Michelle Robert, MSW. Therapist Roberts's opinions, set forth in a five page Mental Residual Functional Capacity Questionnaire dated April

4

14, 2017, contained findings and opinions directly related to plaintiff's ability to function in a competitive full-time employment environment. AR at 881-85. Therapist Roberts opined that plaintiff "meets criteria for major depression" and that she would have "[d]ifficulty thinking or concentrating" and "[i]ntense and unstable interpersonal relationships," and would be an "[e]motional liability." AR at 882-83. Therapist Roberts noted that she had to "repeat and simplify statements" and indicated that plaintiff would have a "fair" ability to understand, remember and carry out complex and detailed job instructions. AR at 884. Therapist Roberts opined that plaintiff's "ability to function as stated above [would] significantly deteriorate were [she] to return to any full-time of [sic] employment." AR at 884. She further indicated that Fairweather "works part time now and appears as though this works for her. Concerns surrounding mood and sleep." AR at 884. Significantly, Therapist Roberts stated that plaintiff would be out of work about two days per month due to her psychological impairments. AR at 885.

It is well-settled that the AC "must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision." Hightower v. Colvin, No. 12-cv-6475, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013). Here, the Commissioner appears to concede that Therapist Roberts's opinion is new and relates to the relevant period, but argues that it was

not material in that it would not change the outcome of the decision. Thus, despite the fact that the AC told plaintiff that it did not consider this evidence, ("We did not consider and exhibit this evidence." AR at 2), the Commissioner now submits that the AC did consider the additional evidence. See Comm'r's Mem. of Law in Support of Mot. for J. on Pleadings (Docket # 19-1), at 24 ("First, the Appeals Council did not reject the information Plaintiff submitted."). Perhaps the AC considered the evidence so that it could be rejected but the AC certainly did not consider it for purposes of deciding whether to grant plaintiff's appeal. The bottom line is that the AC rejected the findings and opinions set forth in these records without evaluating the merits of the work-related non-exertional limitations contained within them.

This was error. Had Therapist Roberts's opinions been evaluated and credited by the AC, they would contradict the accuracy of the RFC assigned to plaintiff by the ALJ. The Court recognizes that licensed social workers are considered sources other than "acceptable medical sources" and therefore their opinions are not entitled to controlling weight. But evidence from other sources such as social workers may be based on the examining and treatment relationship between the social worker and the claimant, which was significant here. See Martino v. Comm'r of Soc. Sec., 339 F. Supp. 3d 118, 128 (W.D.N.Y. 2018) ("However,

an ALJ "should consider information from 'other sources,' such as social workers, which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to work.") (quoting other sources). Indeed, the Commissioner himself recognizes that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Opinions from these medical sources, although "not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. (emphasis added).

The AC did not determine whether Therapist Roberts's opinion was entitled to any particular degree of weight because it did not evaluate the substance of the opinion. The ALJ did not account for any absences from work in his RFC determination (see AR at 69) and the VE testified that employment would be ruled out if plaintiff was "regularly missing one day of work a month." AR at 129. Therefore, if plaintiff was absent from work two times per month as Therapist Roberts opined, plaintiff would be precluded from full-time work. Given the VE's expert opinion about tolerable

7

absences from work, it is problematic for the Commissioner to claim that this evidence "does not show a reasonable probability that it would change the outcome of the decision." AR at 2; see Pennetta v. Commissioner, No. 18-cv-6093, 2019 WL 156263 (W.D.N.Y. Jan. 9, 2019) (finding that licensed social worker's opinion submitted to AC was material because it "undermines the ALJ's RFC determination in several ways").

As to the second batch of medical records, the AC explained that it was compelled to disregard them because they were not relevant to the time period at issue. AR at 2. In what seems to be "boilerplate" language devoid of any substantive discussion, the AC concluded that this "additional evidence does not relate to the period at issue . . . [and t]herefore, it does not affect the decision about whether you were disabled beginning on or before February 24, 2017." AR at 2. Again, this was error. "It is well-established that 'medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing.'" Siracuse v. Colvin, No. 14-CV-6681P, 2016 WL 1054758, at *7 (W.D.N.Y. Mar. 17, 2016) (quoting Newbury v. Astrue, 321 F. App'x 16, *2, n.2 (2d Cir. 2009)). "Additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition

8

previously complained of by the plaintiff." Hightower, 2013 WL 3784155, at *3.

In Webster v. Colvin, 215 F. Supp. 3d 237 (W.D.N.Y. 2016), Judge Geraci examined whether the AC's "categorical refusal to consider new and material evidence solely because it was created after the ALJ's decision" was reversible error. Id. at 242. There, the court acknowledged that the new evidence of plaintiff's back condition could demonstrate that the condition simply worsened over time, or it could clarify a pre-hearing disability and suggest that the condition during the relevant time period was more serious than previously thought. Id. at 243. The court ultimately determined that it could not "assess whether the new evidence relate[d] to the period on or before the ALJ's decision," but that the AC's "cursory, formulaic rejection of the evidence simply because it was generated after the ALJ's decision, without any legal or factual reasoning, is insufficient." Id.

Similarly, here, the AC appears to have summarily rejected treatment records from plaintiff's therapist from March 2017 to June 2017 simply because they were about a later time, without analyzing whether the substance of the opinions was related to plaintiff's pre-hearing medical deficits. See AR at 2. Many of these records clearly relate to plaintiff's "anxiety disorders, and depressive, bipolar and related disorders," which the ALJ found to be severe impairments. See AR at 67. For example, on March

9

28, 2017, Adrienne Roy, NP documented plaintiff's depressed mood and feelings of hopelessness, and acknowledged that plaintiff has had thoughts of suicide. AR at 17. Plaintiff also reported, as she had before, seeing flashes of light. AR at 17. On March 3, 2017, plaintiff grew upset as Therapist Roberts questioned plaintiff's self-reported diagnosis of bipolar disorder. AR at 20. On March 13, 2017, plaintiff again reported feeling angry and seeing a "white shadow" that passes by her. AR at 23. Later that month, on March 28, 2017, she told Therapist Roberts that she continued to question "why am I here, maybe it would be better if I wasn't." AR at 26. Her lethality risk was assessed as "moderate." AR at 26. She reported fatigue and mood wings on April 14, 2017. AR at 30. At the end of April, she again told Therapist Roberts that she sees a "black shadow passing by her." AR at 39. That same day, she was screened positively for PTSD. AR at 40. On May 31, 2017, plaintiff was "highly agitated" at therapy because her therapists would not sign paperwork required for employment and "stormed out" of treatment claiming that she wanted to be discharged. AR at 48.

Although some of plaintiff's records demonstrate new, but perhaps related conditions such as a panic attacks (AR at 39) and a split personality (AR at 42), the bulk of the excluded reports add additional context to the mental health conditions the ALJ found to be severe at Step Two. They cannot, therefore, properly

10

be rejected as about a later time. Moreover, this was not harmless error. Viewed in conjunction with the other records and opinions rejected by the AC, these records tend to impugn the RFC formulated by the ALJ.

## Conclusion

For the reasons explained above, plaintiff's motion for judgment on the pleadings (Docket # 16), is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 19) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.[1]

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     September 24, 2019
          Rochester, New York

---

[1] The ALJ gave "great weight" to the opinion of psychologist David A. Karpf, Ph.D., a consultative examiner. AR at 75. Dr. Karpf opined that plaintiff had "possible learning deficits" and recommended that plaintiff "be administered a Learning Disability Evaluation." AR at 694. On remand, the Commissioner should consider following Dr. Karpf's advice to clarify whether plaintiff's learning deficits qualify as a severe impairment.

11